Our next case is United States v. Lois Brooks. Good morning, and may it please the Court, my name is Andrew St. Laurent, and I'm here to argue on behalf of Defendant Appellant Cross-Appley Lois Brooks. To begin with, Ms. Brooks, I think the record is clear on this point, has certainly had a difficult, if not a tragic life, and I just want to touch upon that very briefly. I think it's sufficient for our purposes today to state that during the time of her plea allocution in the District Court on June 20, 2016, she was being treated with medications that she could not identify for the Court, but she did know had changed recently for a mood disorder and for bipolar disorder. And she also was suffering from severe cognitive deficits, and I'm going to quote from the forensic social worker Melissa Lang, such that there were things that she needed to hear repeatedly and needed to be broken down in the most basic terms and repeated multiple times to make sure she understood what was involved. And to get to the testimony of Ms. Lang, I have to start with my motion, which was referred to this panel by order of the Court dated February 27th of this year. And there are two parts to that motion, neither of which have been contested by the government. The first part is we have moved that the Court take notice of Judge Preska's opinion on Ms. Brooks' 2255 petition. That decision has the relevant language she quotes from Ms. Lang's testimony before her, and it also has Judge Preska's determination of Ms. Lang's credibility, which she said was she found her to be entirely credible. Let me ask you about this. I pulled from the District Court docket the motion that was following the judgment, the motion to withdraw her plea. Yes, Your Honor. And she only raises that her then lawyer promised her she'd get probation. She never raises in it, in either her motion, her memorandum, or her mother's affidavit. Nobody said, they were all talking about the then lawyer, Mr. Duboulay, was promising her that she would get probation as a sentence here. Yes, Your Honor. She mentions the medications she was on at the time of her plea, but she doesn't say in any of those papers, look, I didn't know what was going on in my plea proceedings. So how do we take that, that when she had the opportunity to raise the issue of withdrawing her plea, she only talks about this promise that she got from her lawyer that she was going to get probation and that she was surprised when she got the term of incarceration. Well, Your Honor, in her original motion to withdraw her guilty plea, she did challenge, she stated that her plea was not knowing and voluntary. But that was because it was involuntary because I was promised something else. She does say, as a standalone argument, that her plea was not knowing and voluntary, and it was submitted pro se. And that was prior to her filing of the 2255. And the 2255 motion is, as Your Honor says, confined to, it was ineffective assistance of counsel because I did not get a promised sentence of probation, and it was not knowing and voluntary because I did not get a sentence of probation. So the knowing and voluntariness of her plea per se was not the subject of the 2255. But it was raised in the district court on her original out-of-time motion to withdraw her guilty plea. Not on the basis, though, that she was incompetent on meds and bipolar and whatever else. It was just, you know, it was involuntary. And I guess maybe she was confusing the two. Your Honor, she does say that her plea was knowing and involuntary. And I do take the Court's point that it was not spelled out the basis for that, but it was made when she was pro se. And in terms of arguing about whether that's preserved or not, I would submit that that did suffice to preserve that argument for the purpose of this appeal. The Court obviously can consider it under a plain error standard, even if it were not preserved. She had a hearing on the 2255. Yes, Your Honor. And her lawyer testified, and the mitigation specialist mentioned she testified as well. And there was language about how she needed to be spoken to slowly and clearly and repeated. But I didn't see anything about, you know, I didn't know what was going on at the time of my plea. And that's a basis for withdrawing the plea. That's correct, Your Honor. She did not make those arguments in her 2255. But she can still make them here on her direct appeal, notwithstanding the fact that she failed to raise them in her 2255 application. I'm not saying you can't raise them here. I'm just saying it's kind of curious that the basis we have now is that she was on medication. She didn't know what was going on at the time of her plea. But throughout this 2255 litigation, including challenging her lawyer, it was all about I was promised probation and I didn't get it. Your Honor, that is correct. It is curious, but it does not strip this Court of the ability to consider this argument that I'm making today, that her plea was not knowing and voluntary. You're saying the 2255 is a—you're saying, first, the 2255 is part of the record on this appeal? No, Your Honor. I'm asking for the Court to take judicial notice of the decision and to supplement under 10A the record with the transcript. But the argument— Why can't she raise it on this appeal? Because you can—Federal Rule of Criminal Procedure 11E preserves the right of a defendant to challenge the knowing and voluntary nature of her appeal—of her plea on direct appeal, regardless of whether a motion is made before sentencing. So, again, on the preservation issue, this is, I think, an issue of first impression, maybe in any court, but I think with this Court, is whether an out-of-time motion to withdraw a guilty plea, one that's made after sentence, but still in the district court, is sufficient to preserve the issue for review on a harmless error standard. And I have argued that it is sufficient. But just to touch on the merits, we have a defendant, Ms. Brooks, in a situation where it's going to be a challenging allocation under any circumstances. And the cases have been cited in United States v. Rosilio and Yang Jie Teng as to the obligations of the district court when you're facing a person with infirmities and who's also subject to medication. But taken in combination of the testimony of the forensic social worker, Ms. Lange, about the specific types of disabilities that Ms. Brooks suffered and the types of explanations that she was required to get in order to understand complicated legal principles, I believe shows clearly that she was not, or at least there's good reason to believe, that she did not understand the allocution or the rights that she was giving up. What is it from the allocution itself that you're pointing to, if anything? Yeah. I've got it here, and maybe you can give me a... Sure. So, again, given Ms. Brooks' level of education and sophistication, which were minimal, this allocation, like most, has typical references to complicated legal terms in a summary fashion. I understand that. Yeah, compulsory process. She has said that... In her responses, other than her response about medication, there's nothing in the Rule 11 that would indicate she did not understand, for example, compulsory process, competent evidence, or what a stipulated guidelines range is. That's correct, Your Honor. She also said the medication doesn't affect her ability to understand and have conversations with people, right? She does, Your Honor. That is correct, and that would put this, I think, in the outermost penumbra of a Resilio argument, which had a much stronger factual presentation of a lack of understanding. And Yangxia 10 is even further beyond that in terms of what the record shows of the person, the defendant's inability to understand. I think I'm at my time. Do you want to finish something up? Just to... I know you have a couple of minutes for rebuttal. You can do it then, or you can do it now, if you'd like. Just very briefly on the merits. So given those factual predicates, which are her cognitive deficits, were on medication that she does not understand and which she knows is new, that puts us, I think, in the outermost bounds of what Rule 11 would allow to stand. You put that in combination with the uncontested and found-to-be-credible evidence of Melissa Lang in her 2255 petition, gives this Court sufficient basis to remand for a voluntariness hearing on the plea. Thank you, Your Honor. All right, you've got a couple of minutes to talk to us again. And how about the government? Good morning. May it please the Court. The Court is correct. The only basis that was asserted to withdraw the guilty plea in the district court was the fact that defense counsel had supposedly incorrectly advised Ms. Brooks that she was guaranteed a sentence of probation. She never raised competency in the motion to withdraw the plea. She never raised competency in the 2255 petition. The first time this has ever been raised is on this appeal. So I didn't understand exactly counsel's argument. Are you saying that this cannot be raised before this Court because of the absence of anything in the record of the district court? We're not specifically saying that. We're saying that this is reviewed under a plain error standard because it hasn't been preserved in the lower court. Yes. And under the plain error standard, there is no way to get to plain error here given this record. That's the government's position. Even if this record were supplemented. I did not catch. What is the rule your adversary was relying on in his argument as to why this can be raised in the district court? I believe it was . . . Can it be raised in this court? I believe it's Rule 11E, Your Honor. And what about Rule 11E? I think his position, the appellant's position, was that they're entitled to raise this under Rule 11E on direct appeal for the first time. And you disagree with that? The government is not specifically disagreeing with that. The main point of the government's opposition is this is certainly reviewed under plain error, and under plain error, they don't meet the plain error standard. There was an argument in the reply brief that this had been preserved and the court shouldn't apply plain error, and that's just not true. Plain error is not going to be much help if there was simply nothing in the record to support the position being taken, right? Right. That's correct. And just specifically walking through some of the things that are in the record, obviously the guilty plea proceeding itself, even when it comes to the . . . First of all, Ms. Brooks said she understood under oath the rights that she was waiving, the maximum sentences, the stipulated guidelines range, and that her plea was voluntary and of her own free will. But with respect to the medication issue, certainly Judge Buchwald did comply with Rule 11 and the case law in this area. She inquired with Ms. Brooks about the nature of the medication. She confirmed that the medications didn't affect her ability to understand the proceedings. And she advised Ms. Brooks that if she had any difficulty understanding anything that was going on, that she should alert the court, which Ms. Brooks never did. And that's more than sufficient under Rule 11. What do you make of the sentencing memo that was provided after that, which details her life history, which is about as bad as I've ever seen? And I've seen a lot. And all the unaddressed emotional and mental issues that she had, as well as the physical abuse she suffered. And then the medications as well. Wouldn't that create something of an argument that maybe she didn't understand what was going on at that plea? Your Honor, certainly the government does not disagree that Ms. Brooks had a very difficult life history, that she had some serious psychiatric conditions. A low IQ score was also referenced. But none of that, in and of itself, creates any suggestion that she was not competent to plead guilty. The competency standard that's been articulated by this court is whether the defendant has sufficient present ability to consult with their lawyer with a reasonable degree of rational understanding. And whether he has a rational as well as factual understanding of the proceedings against him. And that's clear. And even if this court were to supplement the record with Ms. Lange's testimony, that only further demonstrates how clear that is. Because what Ms. Lange testified to, certain of these aspects were included in the appellant brief, some weren't. Is that Ms. Brooks was concerned before she pled guilty about some of the effects of her guilty plea. Including the fact she was going to have to register as a sex offender. And that then Ms. Lange spoke to her again after she had pled guilty and before sentencing. And Ms. Brooks was concerned about what term of imprisonment might be imposed upon her. All of that suggests, respectfully, that she did understand when she pled guilty. Whatever psychiatric conditions she was suffering from, whatever medication she was on, whatever other cognitive deficit she had. That she did understand what was happening and the consequences. And that she meets the standard for competency in this circuit and in the Supreme Court. Just turning very briefly to. Did the male get prosecuted for this as well? Sorry, the male? The male who was arranging this at the beginning and was absent for a while. And that's when Brooks kind of took over. At least that's what she agreed to. Yes. Whatever happened to him? He was prosecuted. And I don't remember his sentence off the top of my head. But he received a very significant term of incarceration. Just turning very briefly to the government's cross appeal regarding the term of supervised release. The standard to apply is plain error here. There was plain error. In particular, because the supervised release term was below the statutory minimum. The error affected the substantial rights of the government. Because the outcome of the proceedings were affected. In that Ms. Brooks received a term of supervised release that was two years shorter than that authorized by law. In addition, because mandatory minimums are intended to apply to all defendants, the failure to apply that congressional mandate here did affect the fairness, integrity, or public reputation of the proceeding. That requires a resentencing of that provision, correct? You can't do it administratively by just fixing the judgment.  The government's understanding was that a limited remand solely for the purpose of correcting the supervised release term was possible under the law. But she has to be there. She'd have to be there. Yeah. Pretty sure we've held that. Okay. But the other thing is the question would be when it goes back for resentencing, what would be the scope of the proceedings? And I take it it's the government's position that they would be limited to the supervised release question. Yes, Your Honor. If the court does not have any further questions, the government's prepared to rest on its purse. I just have one technical question. Reviewing her Rule 11 challenge or the withdrawal of the plea issue, the principal argument, is that a harmless error review by us or is it plain error review? Sorry. I just want to make sure I understand. So do we review the record on a direct appeal when the defendant has raised the issue of whether her plea was voluntary and intelligent? Do we review it on a plain error basis or a harmless error basis? Do you know offhand? I believe plain error, Your Honor. And it's important to note that all of these motions were filed after the judgment was entered. It's not a motion to withdraw a plea that was filed before the judgment was entered, the judgment that the appeal was taken on. Thank you. Mr. St. Laurent, you had a couple of minutes. Yes, Your Honor. Thank you. And just briefly, to pick up on the last point, with regards to preservation, I think the government slightly, and I'm sure inadvertently, misstated the record. There was a motion to withdraw the guilty plea after the sentence, but I think it was before the judgment was entered. So the district court still had jurisdiction over the case at the time that motion was made. How long was there a gap between the sentencing and the judgment being entered? I think I . . . I didn't think it was very long. We have the judgment. Your Honor is correct. The judgment I have is November 17, 2016, and the motion is January 3, 2017. So it was after the . . . It was. You were correct, Your Honor. And so it was the government. But in any event, there was still a motion that was made in the district court on that point. And there is this statement within it, to go to Judge Walker's point, it is clear that my plea was not knowing, intelligent, and voluntary at the time it was entered. And that's in the district court at Document 61. I believe it was the same document that Judge Walker was referring to before. And it is immediately followed by arguments. But does she say, because I was on medication . . . No. . . . and I didn't understand it? It does not. So it's consistent with her later argument that it's because he told me I was going to get probation. It is consistent, and it is immediately followed by that argument. But again, giving the full benefit of the doubt to a defendant proceeding pro se, I would argue that that is preserved and that we are on a harmless standard here. Do you think it's harmless error? I do think it's harmless error, Your Honor. And again, there is a number of cases in the Second Circuit that have addressed this question before. But in all of those cases, there was no motion in the district court, either before or after sentence. So I believe this is distinct from those prior cases. With regards to the government's argument about Lange's testimony as to Ms. Brooks' understanding of the plea proceedings . . . I'm sorry, if I could just finish this one. Sure, go ahead. Thank you. She was concerned about the effects of the guilty plea, and I don't think there's any question that that was the most important question in her mind . . . when she was speaking with her lawyer, Mr. Dubele. And, I also think the transcript could fairly said to be construed in such a way that she understood the plea . . . in the form of a bargain for exchange. In exchange for this plea, I will get X. But, that's not what Rule 11 requires. Rule 11 requires not only understanding what the inputs and the outputs of the plea bargain are . . . but, all of the rights that are being given up in order to affect that bargain. And, that is the point at which I think this Rule 11 allocution is inadequate. And, if the court is going to remand this case, I would ask that the court remand the case for a voluntariness hearing on this question. Thank you very much. Thank you both. And, we'll reserve decision.